# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
SECURITIES AND EXCHANGE                 )
COMMISSION,                             )
                                        )
           Plaintiff,                )
                                        )
    v.                                )      Civil Action No. 16-1803 (ABJ)
                                        )
RPM INTERNATIONAL, INC., *et al.*,      )
                                        )
           Defendants.               )
_____)

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Securities and Exchange Commission ("SEC") has brought this action for securities violations under the Securities Act of 1933 ("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act"), and Exchange Act Rules, against defendants RPM International, Inc. ("RPM") and RPM's General Counsel and Chief Compliance Officer Edward W. Moore ("Moore"). Compl. [Dkt. #1] ¶¶ 1, 3 8–9, 85–105. Plaintiff alleges that defendants fraudulently failed to disclose loss contingencies on certain SEC filings after the Department of Justice ("DOJ") conducted an investigation into a complaint against RPM under the False Claims Act. *Id.* ¶¶ 1–2. Defendants moved to transfer this case to the United States District Court for the Northern District of Ohio under 28 U.S.C. § 1404(a) on the grounds that private and public interests favor transfer. After consideration of all of the facts, the Court will deny the motion.

## BACKGROUND

RPM is a Delaware corporation headquartered in Medina, Ohio that "manufactures and sells various chemical product lines, including paints, protective coatings, roofing systems, sealants, and adhesives." Compl. ¶ 14. Beginning in 2007, Moore served as RPM's General

Counsel and Corporate Secretary, and in 2011, he assumed his current position of Chief Compliance Officer. *Id.* ¶ 15.

The instant action stems from a previous lawsuit against RPM and one of its wholly-owned subsidiaries, Tremco, Inc. ("Tremco"), a company that "provides roofing materials and services." Compl. ¶¶ 1–2, 14.  In July 2010, a former Tremco employee filed a complaint under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, alleging that Tremco overcharged the United States under certain government contracts by failing to provide required price discounts.  Compl. ¶¶ 2, 17.  The DOJ initiated an investigation during which Moore oversaw the responses of both RPM and Tremco and kept RPM and auditors informed.  *Id.* ¶¶ 2, 17–20.  RPM and the DOJ eventually settled the False Claims allegations for approximately $61 million.  *Id.* ¶¶ 2, 71.

According to plaintiff, the ongoing DOJ investigation described above amounted to a "loss contingency," which is defined as "an existing condition, situation, or set of circumstances involving uncertainty as to a possible loss that will be resolved when one or more future events occurs or fails to occur," including "actual or possible claims and [] pending or threatened litigation."  Compl. ¶ 23.  If a material loss was reasonably possible, plaintiff alleges that RPM had to disclose this loss contingency and record it as a charge against income in order to comply with its reporting obligations under the securities laws.  *Id.*

Plaintiff claims that defendants did not publicly disclose this loss contingency until the "fiscal third quarter end[ing] February 28, 2013," Compl. ¶¶ 64–65, even though defendants were allegedly required to account for the loss contingency beginning in March 2011.  *Id.* ¶ 23.  As a result, plaintiff alleges that defendants "submitted multiple materially false and misleading filings to the SEC" between October 2012 and December 2013 because the filings did not account for a

loss contingency and continued to be misleading even after the company disclosed the DOJ investigation and recorded an accrual. *Id.* ¶¶ 4–5.

On September 9, 2016, the SEC brought this securities action against RPM and Moore in the District Court for the District of Columbia. *See* Compl. Defendants filed a motion to transfer this action to the District Court for the Northern District of Ohio on October 4, 2016. *See* Notice of Defs.' Mot. to Transfer This Case to the United States District Court for the Northern District of Ohio [Dkt. # 19] ("Defs.' Mot."); Mem. of P. & A. in Supp. of Defs.' Mot. [Dkt. # 19-1] ("Defs.' Mem.") at 10–19. Defendants argue that private and public interest factors favor transfer because the most important events took place in the Northern District of Ohio; the Northern District of Ohio is the most convenient forum for the parties and witnesses; the relevant evidence is located at RPM's headquarters; the District Court for the Northern District of Ohio has a shorter time to trial than the District Court for the District of Columbia; and Ohio has the stronger local interest in seeing the case resolved. Defs.' Mem. at 11–19. Plaintiff opposed defendants' motion. Pl.'s Opp. to Defs.' Mot. [Dkt. # 22] ("Pl.'s Opp."). It contends that defendants have not met their burden to justify the transfer because plaintiff's choice of forum is "entitled to deference," significant events took place in the District of Columbia, and it will take less time to try the case here. *See id.* at 1–2, 13–22. On November 15, 2016, defendants filed a reply in support of their motion. *See* Reply Mem. of P. & A. in Supp. of Defs.' Mot. [Dkt. # 23] ("Defs.' Reply").

## STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The defendant, as the moving party, bears the burden of establishing that transfer is proper. *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C.

2001).  The Court has broad discretion in deciding whether transfer from one jurisdiction to another is appropriate.  *See Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955); *Sec. & Exch. Comm'n v. Savoy Indus., Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978).  The decision to transfer requires an "individualized, case-by-case consideration of convenience and fairness."  *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

The threshold question under section 1404(a) is whether the action "might have been brought" in the transferee district.  28 U.S.C. § 1404(a); *see also Lentz v. Eli Lilly & Co.*, 464 F. Supp. 2d 35, 36 (D.D.C. 2006).  An action may be brought in any judicial district in which "any defendant resides, if all defendants are residents of the State in which the district is located" or in a district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)–(2).  The venue provisions of the Securities Act and the Exchange Act also provide that venue is proper where "the defendant is found or is an inhabitant or transacts business." 15 U.S.C. §§ 77v(a), 78aa.

After establishing that the threshold requirement has been met, the Court "must balance case-specific factors which include the private interests of the parties as well as public interests such as efficiency and fairness."  *See Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000).  The private interest considerations include:

> (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

*Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996) (internal citations omitted).  Public interest considerations include: "(1) the transferee's familiarity with the

governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Id.*

## ANALYSIS

It is undisputed that this action could have been brought in the Northern District of Ohio. Defs.' Mem at 10; Pl.'s Mem. at 10; *see also* 28 U.S.C. § 1331(b)(1); 15 U.S.C. §§ 77v(a), 78aa. Therefore, the Court need only examine and balance the private and public interest factors. *See Lentz*, 464 F. Supp. 2d at 37 (determining on a motion to transfer that only the second inquiry requires examination where it was undisputed that the action could have been brought in the transferee district).

## I.   The Private Interest Factors Do Not Favor Transfer

### A.  Plaintiff's Choice of Forum

The D.C. Circuit has held that "a plaintiff's choice of forum will rarely be disturbed . . . unless the balance of convenience is strongly in favor of the defendant." *Gross v. Owen*, 221 F.2d 94, 95 (D.C. Cir. 1955). The plaintiff's choice of forum is often accorded deference "where the plaintiffs have chosen their home forum and many of the relevant events occurred there." *New Hope Power Co. v. U.S. Army Corps of Eng'rs*, 724 F. Supp. 2d 90, 95 (D.D.C. 2010), citing *Great Socialist People's Libyan Arab Jamahiriya v. Miski*, 946 F. Supp. 2d 137, 144–45 (D.D.C. 2007). But an "insubstantial factual nexus between the case and the plaintiff's chosen forum" will weaken the deference given to plaintiff's forum. *Id.*

Here, plaintiff's choice of forum is entitled to deference. The SEC is located in the District of Columbia and the District of Columbia has meaningful ties to the alleged violations of the

securities laws outlined in the complaint.[1]  Although the SEC filings themselves are at the center

of plaintiff's complaint, that is not the only fact that connects this lawsuit to the District of

Columbia.  *Cf. Sec. & Exch. Comm'n v. Ernst & Young*, 775 F. Supp. 411, 414 (D.D.C. 1991)

(transferring case from District of Columbia to Northern District of Texas where all the underlying

facts arose in Texas other than the SEC filings themselves).  Many of the underlying events leading

to the allegedly false SEC filings – such as the DOJ investigation and meetings and correspondence

between RPM and the DOJ – also took place in the District of Columbia.[2]  Compl. ¶¶ 28, 30, 33,

46, 48, 62, 64, 73; Pl.'s Opp. at 2, 4–7.

Because a factual nexus between the case and plaintiff's chosen forum exists, plaintiff's

choice of forum is entitled to deference, and the first factor does not favor transfer.

### B.  Defendants' Choice of Forum

Defendants' choice of forum is not ordinarily entitled to deference, so defendants must

"establish that the added convenience and justice of litigating in its chosen forum overcomes the

deference ordinarily given to the plaintiff's choice."  *Sheffer v. Novartis Pharms. Corp.*, 873 F.

Supp. 2d 371, 376 (D.D.C. 2012).  Defendants argue that transfer is warranted because the

---

1       Defendants argue in their reply that plaintiff has not shown that the District Court for the District of Columbia is a proper venue.  *See* Defs.' Reply at 2–4.  However, the standard to be applied under a motion to transfer under section 1404(a) is not whether plaintiff has shown that its chosen venue is proper, but whether defendants have shown that the transferee venue is proper. *See* 28 U.S.C. § 1404(a) ("[A] district court may transfer any civil action to any other district or division where it *might have been brought*.") (emphasis added).

2       Defendants point out that "it is the SEC's standard practice to bring enforcement actions in the forum in which the defendant resides or where material events occurred," and they proffer evidence showing that only 15 out of more than 1,000 enforcement actions have even been brought in the District of Columbia since January 2014. Defs.' Mem at 12.  According to defendants, "one can discern no legitimate explanation for why the SEC cherry-picked this case to litigate in this District" other than "improper forum shopping."  *Id.*  But the choice is also explained by the fact that a series of material events occurred in the District of Columbia.

corporate and individual defendants, and potential witnesses, are located in the Northern District of Ohio.  Defs.' Mem. at 12–13.  But courts have rejected this argument when a defendant is a multinational corporation "readily able to defend [a] lawsuit in either district."  *See Sheffer*, 873 F. Supp. 2d at 376 ("[A] multinational corporation . . . has no real stake in having the case heard in either forum.").  And while this case may have some connection to the Northern District of Ohio, the existence of such a connection to a transferee district alone is not enough to warrant transfer.  *See Malveaux v. Christian Bros. Servs.*, 753 F. Supp. 2d 35, 40–41 (D.D.C. 2010) (denying motion to transfer even where court concluded that defendant's choice of forum was "reasonable" because it was headquartered in the transferee district, and witnesses and evidence relating to the claim were located there).

A defendant's choice of forum will be accorded weight when there are parallel proceedings in the proposed district, *see Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n*, 856 F. Supp. 2d. 186, 193 (D.D.C. 2012), or when a defendant seeks transfer to the plaintiff's home forum.  *See Bederson v. United States*, 756 F. Supp. 2d 38, 47 (D.D.C. 2010).  But no such facts exist here, and defendants have not shown that the "added convenience and justice" of litigating in the Northern District of Ohio overcomes the deference given to plaintiff's choice of forum.  *Sheffer*, 873 F. Supp. 2d at 376.  Accordingly, this factor does not favor transfer.

### C.  Whether the Claim Arose Elsewhere

Transfer is favored when "the material events that form the factual predicate of the plaintiff's claim did not occur in the plaintiff's chosen forum."  *Id.*, citing *Intrepid Potash-N.M., LLC v. U.S. Dep't of Interior*, 669 F. Supp. 2d 88, 95 (D.D.C. 2009).  Defendants insist that the material events underlying this action are the corporate decisions underlying the SEC filings, which were made at RPM's headquarters in Ohio, *see* Defs.' Mem. at 13, and plaintiff maintains

that the SEC filings themselves are among the material events that should be viewed as having taken place in the District of Columbia.  *See* Pl.'s Opp. at 16.

There appears to be support for both positions.  *See Berenson v. Nat'l Fin. Servs., LLC*, 319 F. Supp. 2d 1, 4 (D.D.C. 2004) (concluding that a claim arose where the corporate decisions were made), and *Savoy Indus., Inc.*, 587 F.2d at 1155 (holding that some operative facts did occur in the District of Columbia where non-filing or misfilings with the SEC occurred).  Moreover, as discussed above, events other than the SEC filings took place in this district.

Since material events giving rise to plaintiff's claim occurred in both plaintiff's and defendants' chosen forums, this factor is neutral.

### D.  Convenience of the Parties

Defendants contend that because "Mr. Moore and all of RPM's representatives reside in the Norther District of Ohio," it would "pose a significant inconvenience for them" to have to regularly travel and spend lengthy periods of time in the District of Columbia.  Defs.' Mem. at 14. But for the convenience of the parties factor to weigh in favor of transfer, "litigating in the transferee district must not merely shift inconvenience to the non-moving party."  *Mazzarino v. Prudential Ins. Co. of Am.*, 955 F. Supp. 2d 24, 31 (D.D.C. 2013).  Plaintiff submits that transfer would be inconvenient because "all SEC employees involved with this case are based at the agency's headquarters in Washington, D.C. and the SEC does not have an office in Ohio."  Pl.'s Mem. at 18.  Defendants characterize this as a "minor litigational inconvenience[]" which seems to "relate far more to the convenience of SEC attorneys than to the SEC itself."  Defs.' Mem. at 14, quoting *Ernst & Young*, 775 F. Supp. at 415.

The *Ernst & Young* case is distinguishable, though, since in that case, the SEC had a field office in the transferee district.  *See* 775 F. Supp. at 415.  Since RPM is an international corporation

that is well able to litigate in the District of Columbia, a transfer would operate to shift inconvenience to the SEC. *See Mazzarino*, 955 F. Supp. 2d at 31. Therefore, this factor does not favor transfer.

### E. Convenience of the Witnesses

"The convenience of the witnesses has been described as 'the most critical factor'" on a motion to transfer. *Sheffer*, 873 F. Supp. 2d at 377, quoting *Pyrocap Int'l Corp. v. Ford Motor Co.*, 259 F. Supp. 2d 92, 97 (D.D.C. 2003). But the convenience of the witnesses is only considered "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Bederson*, 756 F. Supp. 2d at 49, quoting *Mohammadi v. Scharfen*, 609 F. Supp. 2d 14, 18 (D.D.C. 2009). "Without evidence to the contrary, courts assume that witnesses will voluntarily appear." *Id.*, quoting *Mahoney v. Eli Lilly & Co.*, 545 F. Supp. 2d 123, 127 (D.D.C. 2008).

To favor transfer, the moving party must specify "what a nonresident witness will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel to a foreign jurisdiction." *Sheffer*, 873 F. Supp. 2d at 378, quoting *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 33 (D.D.C. 2002). Defendants have made no showing that any of their witnesses would be unavailable for trial, and they argue simply that it would be inconvenient for their witnesses to "travel hundreds of miles." Defs.' Mem. at 15–16. But "mere inconvenience to the witnesses alone is not enough to warrant transfer," *FC Inv. Grp. LC v. Lichtenstein*, 441 F. Supp. 2d 3, 14 (D.D.C. 2006), citing *Thayer/Patricof*, 196 F. Supp. 2d at 34, and therefore, this factor does not favor transfer.

### F. Ease of Access to the Sources of Proof

While access to proof is still relevant in a motion to transfer inquiry, modern technology has made "the location of documents [] much less important" to a determination of convenience

than it once was.  *Sheffer*, 873 F. Supp. 2d at 378.  This factor is further diminished if there has already been extensive discovery from prior litigation.  *Id.*  Here, the SEC "gathered numerous records" from defendants during the prior False Claims Act investigation.  Pl.'s Opp. at 20.  So, this factor is diminished at least slightly.  If the parties engage in discovery, defendants contend that "[m]ost of the relevant evidence . . . will be found in northern Ohio," Defs.' Mem. at 16, but do not dispute that they "will seek documents from the SEC," which is located in the District of Columbia.  Defs.' Reply at 16; Pl.'s Opp. at 20.  To the limited extent that this factor is relevant, it is neutral.

Taken as a whole, the private interest factors do not favor transfer.

## II.    The Public Interest Factors Do Not Favor Transfer

Because the Court has concluded that the private interest factors do not support the transfer of this action, it is not required to weigh the public interest factors."  *Ingram v. Eli Lilly & Co.*, 251 F. Supp. 2d 1, 5 (D.D.C. 2003).  However, the Court will briefly review the public interest considerations regarding transfer and finds that they too do not favor transfer.

### A.    Transferee's Familiarity with the Governing Laws

"All federal courts are presumed to be equally familiar with the law governing federal statutory claims" like the claims at issue here.  *Fed. Hous. Fin. Agency*, 856 F. Supp. 2d. at 194, quoting *Miller v. Insulation Contractors, Inc.*, 608 F. Supp. 2d 97, 103 (D.D.C. 2009).  "[N]either venue is favored," *id.*, and neither party disputes this.  *See* Defs.' Mem. at 17; Pl.'s Opp. at 21.  So, this factor is neutral.

### B.    Relative Congestion of the Courts

When considering the congestion of the courts, the Court compares "the districts' median times from filing to disposition or trial."  *Sheffer*, 873 F. Supp. 2d at 380, citing *Pueblo v. Nat'l*

*Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 40 n.2 (D.D.C. 2010).  Defendants claim that the Northern District of Ohio has a shorter median time to trial, *see* Defs.' Mem. at 18, and plaintiff notes that the District of Columbia has a shorter median time to disposition.  *See* Pl.'s Opp. at 21. Because these statistics essentially cancel one another out, this factor is neutral.  *See Sheffer*, 873 F. Supp. 2d at 380–81 (finding that when one court has a quicker time to trial, and the other court has a quicker time to disposition, the congestion of the courts "factor is in equipoise" and is "not very helpful").

### C.  Local Interests in Deciding Local Controversies

The third and final public interest factor is the local interest in deciding local controversies at home.  It is true that Ohio has a local interest in adjudicating this controversy because defendants are headquarted in Ohio and some of the underlying events took place there.  *See* Defs.' Mem. at 18–19.  But the Court is not persuaded that these facts warrant transfer because at least some of the events giving rise to plaintiff's claims arose in the District of Columbia, and there is a national interest in the enforcement of federal securities laws.  *Sheffer*, 873 F. Supp. 2d at 381 ("[W]hen national significance attaches to a controversy, local interest can sometimes be diminished."); *see also Babbitt*, 104 F. Supp. 2d at 17–18 (denying motion to transfer after determining that the decisions surrounding oil and gas leasing in Alaska were of "national significance" and not of local interest).  Because the alleged violation of federal securities laws "is not a local dispute affecting only the local residents of [Ohio]," *Babbitt*, 104 F. Supp. 2d at 17, the Court finds that this factor is not strong enough to support transfer.

Accordingly, the Court concludes that the public interest factors also do not favor transfer.

**CONCLUSION**

In considering the private and public interest factors, the Court finds that multiple factors are either neutral or do not weigh in favor of transfer.  Because defendants have not met their burden to demonstrate that the facts warrant a transfer, the Court concludes that there is no decisive reason for upsetting plaintiff's choice of forum.  Accordingly, defendants' motion to transfer is **DENIED**.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE:  December 20, 2016